Nadler *v.* Warner Company, Appellant.

140

Argued January 14, 1936. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Daniel G. Murphy,* with him *Francis Chapman,* for appellant.

*Allen Spangler,* for appellee.

OPINION BY MR. JUSTICE LINN, March 23, 1936:

This appeal is from judgment on a verdict for plaintiff in trespass.

At about 6:15 A. M. January 6, 1932, plaintiff, crossing Delaware Avenue at Shackamaxon Street in Philadelphia was run down by a car and was severely injured. A disputed point was the identification of the car. Much divergent testimony was presented. Plaintiff stated that he was familiar with the appearance of defendant Warner Company's trucks and, just before he was hit, saw the vehicle long enough to observe the name Warner painted on the front of the cab, that the truck was light in color, similar to those used by defendant. In this he was partly corroborated by a witness, who, though he did not see the accident, heard plaintiff's outcry and rushed out from his place of business at the corner in time to see a light colored truck disappearing in the mist and darkness. Defendant presented testimony of two witnesses who testified that they saw the accident and that plaintiff was struck by a black sedan car which was passing a truck which was not a Warner truck. Defendant also presented evidence of its employees and its records tending to show that none of its trucks was in the vicinity of the accident at the time. It therefore contends that the verdict was against the weight of the evidence. Little on either side was left unimpeached; it was necessarily for the jury. Sufficient doubt was cast on defendant's records to destroy the effect defendant would attribute to them. We find no reason for differing from the following statement made by the learned court below: "All of this conflicting and questioned evidence was for the jury's consideration, and we are not persuaded that their verdict was contrary to its weight." Nor are we convinced that the verdict as reduced from $17,006.00 to $14,000.00, was excessive as suggested by appellant. One of plaintiff's legs was amputated as a result of the accident; he was deprived of the sight of his left eye; he lost the practical use of his right hand; he

incurred hospital and medical bills in the sum of $1,-
406.50; his earnings before the accident were $30.00 per
week; he was not able to work from the time of the ac-
cident up to trial, and at that time his probable future
earning power was problematical, if not negligible.

A third point remains. In cross-examining plaintiff,
it was proposed to ask him what counsel he had pre-
viously employed for the purposes of the case on trial,
and what he had told him of his cause of action, the pur-
pose doubtless being to show some fatal difference be-
tween that account and the one given at the trial. On
objection, the learned trial judge said: "I do not rule
out just that proposal, because if you were to follow that
offer up by proof, by calling a witness," when he was in-
terrupted by counsel for defendant, who said: "I cannot
call them as witnesses without"; the court: "I do not
think it would be proper to admit it. We will sustain
the objection." The ruling has been duly assigned for
error and was the subject of much argument.

The Act of May 23, 1887, P. L. 158, section 5 (d), 28
PS, section 321, provides: "Nor shall counsel be com-
petent or permitted to testify to confidential communi-
cations made to him by his client or the client be com-
pelled to disclose the same, unless in either case this
privilege be waived upon the trial by the client." The
nature of confidential communications and the protec-
tion afforded have been the subject of consideration in
many cases in this state.*

Generally, the question has arisen during the exam-
ination of the attorney; the client is entitled to the same
measure of protection. No Pennsylvania case has been

---

* Among them, Levers v. Van Buskirk, 4 Pa. 309; Beeson v.
Beeson, 9 Pa. 279; Moore v. Bray, 10 Pa. 519; by SHARSWOOD, J.,
in Jeanes v. Fridenberg, 3 Clark 199; Turner v. Warren, 160 Pa.
336, 28 A. 781; Seip's Est., 163 Pa. 423, 30 A. 226; Sargent v.
Johns, 206 Pa. 386, 55 A. 1051; Surface v. Bentz, 228 Pa. 610, 77
A. 922; Alexander v. Queen, 253 Pa. 195, 97 A. 1063; Com. v.
Vogle, 99 Pa. Superior Ct. 65.

called to our attention in which either appellate court considered communications to counsel involving the commission of crime or fraud in the future. Cases in other jurisdictions hold that the privilege does not protect communications made for the purpose or in the course of the commission of proposed crime or fraud. The reason for the nonapplication of the rule has been variously stated: ". . . no Court can permit it to be said that the contriving of a fraud can form part of the professional occupation of an attorney or solicitor": *Follett v. Jefferyes,* 1 Sim. (N. S.) 1, 61 Eng. Repr. 1. "In order that the rule may apply there must be both professional confidence and professional employment, but if the client has a criminal object in view in his communications with his solicitor one of these elements must necessarily be absent. The client must either conspire with his solicitor or deceive him. If his criminal object is avowed, the client does not consult his adviser professionally, because it cannot be the solicitor's business to further any criminal object. If the client does not avow his object he reposes no confidence, for the state of facts, which is the foundation of the supposed confidence, does not exist. The solicitor's advice is obtained by a fraud": *Queen v. Cox,* 14 Q. B. D. 153, 168. "Such communications were not made to the attorney, in his professional capacity, as they were such, as he could not receive in such capacity, and therefore, were not privileged": *Standard Fire Ins. Co. v. Smithhart,* 183 Ky. 679, 685, 211 S. W. 441. See, too, *Matthews v. Hoagland,* 48 N. J. Eq. 455, 469, 21 A. 1054. When the advice of counsel is sought in aid of the commission of crime or fraud, the communications are not "confidential" within the meaning of the statute and may be elicited from the client or the attorney on the witness stand. "There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law.

He must let the truth be told": *Clark v. U. S.*, 289 U. S. 1, 15. See, also, *Wigmore, Evidence*, Vol. 4, sec. 2298.

The protection of the statute is lost when both attorney and client are guilty or if the client alone is guilty. But before the fact may be shown the court must be satisfied that the evidence proposed to establish the fact is sufficient to go to the jury for the purpose. "To drive the privilege away, there must be 'something to give colour to the charge'; there must be 'prima facie evidence that it has some foundation in fact.' . . . When that evidence is supplied, the seal of secrecy is broken": *Clark v. U. S.*, supra; *O'Rourke v. Darbishire* [1920] A. C. 581, 601; *Higbee v. Dresser*, 103 Mass. 523.

It is at this point that appellant's offer of proof failed; it was not to show proposed fraud or crime; if that was the intention, if counsel was prepared to prove the fact which would remove the protection of the statute, it should have been stated; if the offer of proof had so informed the trial judge, he would doubtless have received the evidence as he indicated by his remark "I do not rule out just that proposal, because if you were to follow that offer up by proof, by calling a witness" (supra). In *Birmingham Ry. v. Wiedman*, 119 Ala. 547, 24 So. 548, the court ruled that a prima facie case had not been made out allowing the client to be examined as to his communication to his counsel. See, generally, *Cummins v. Com.*, 221 Ky. 301, 298 S. W. 943; *Gebhart v. United Rys.*, 220 S. W. 677 (Mo.), where the attorney was permitted to testify to such communications. In *Carney v. United Rys.*, 205 Mo. App. 495, 226 S. W. 308, and in *Atlanta Coca-Cola Bottling Co. v. Goss*, 50 Ga. App. 637, 179 S. E. 420 (Ga.), and *Thomas v. Jones*, 105 W. Va. 46, 141 S. E. 434, the ground was not laid for receiving the evidence. The assignment of error raising this question must be overruled.

Judgment affirmed.