## MacQuown v. Dean Witter Reynolds Inc.

*Paul G. Kachulis*, for plaintiffs.

*Theodore E. Breault*, for defendant Dean Witter Reynolds Inc.

*Charles Weiss*, for defendant Thorp, Reed & Armstrong.

WETTICK, *A. J.* May 4, 1987 — This lawsuit arises out of previous litigation between Dean Witter Reynolds Inc., and plaintiffs in which Dean Witter was represented by the law firm of Thorp, Reed and Armstrong. Through discovery, plaintiffs have requested Thorp, Reed to produce all written communications and to provide a narrative statement of all oral communications from Thorp, Reed to Dean Witter in connection with the previous litigation. Thorp, Reed has refused to furnish this information on the basis of the attorney-client privilege.[1] Plaintiffs' motion to compel Thorp, Reed to

---

1. There is no claim that any information which plaintiffs seek is trial preparation material protected by Pa.R.C.P. 4003.3.

provide this information is the subject of this opinion and order of court.

Dean Witter has not raised reliance on the advice it received from counsel in the previous litigation as a defense to this lawsuit. Consequently, there has been no waiver of any attorney-client privilege that would protect the information which plaintiffs seek.

Plaintiffs concede that the information which they seek was furnished by Thorp, Reed to Dean Witter pursuant to an attorney-client relationship. However, this information, according to plaintiffs, is outside the scope of the attorney-client privilege because that privilege protects only communications from the client to counsel and the information which plaintiffs seek is limited to communications from counsel to the client.

The attorney-client privilege is a fundamental precept in our body of common law that is presently codified in the Act of July 9, 1976, P.L. 586, §2, 42 Pa.C.S. §5928:

"In a civil matter, counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case the privilege is waived upon the trial by the client."

Not all information which an attorney obtains during the representation of a client is protected by the attorney-client privilege. The purpose of the privilege is to foster an open attorney-client dialogue essential for the proper representation of a client. Accordingly, the privilege protects only disclosures necessary to obtain informed legal advice which might not have been made absent the privilege. *Brennan v. Brennan,* 281 Pa. Super. 362, 422 A.2d 510, 513-15 (1980); *Cohen v. Jenkintown Cab Co.,* 238 Pa. Super. 456, 357 A.2d 689 (1976). The oft-

cited case of *United States v. United Shoe Machinery Corp.*, 89 F. Supp. 357, 358-9 (D. Mass., 1950) formulated criteria for the attorney-client privilege that have been widely accepted.

"The privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the lawyer was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client."

These criteria appear to be required by the Pennsylvania appellate courts. See *Brennan v. Brennan, supra; Loutzenhiser v. Doddo,* 436 Pa. 512, 260 A.2d 745 (1970); *Tracy v. Tracy,* 377 Pa. 420, 105 A.2d 122 (1954); *Nadler v. Warner Co.,* 321 Pa. 139, 184 Atl. 3 (1936); *Cridge's Estate,* 289 Pa. 331, 137 Atl. 455 (1927); *Alexander v. Queen,* 253 Pa. 195, 97 Atl. 1063 (1916); *Turner v. Warren,* 160 Pa. 336, 28 Atl. 781 (1894); *Commonwealth v. Trolene,* 263 Pa. Super. 263, 397 A.2d 1200, 1204-5 (1979); *Zimmerman v. Berrie,* 10 D.&C.3d 110 (1979); *Trzesniowski v. Erie Insurance Exchange,* 59 D.&C.2d 44 (1973); and *In Re Westinghouse Electric Corporation Uranium Contracts Litigation,* 76 F.R.D. 47, 56-7 (W.D. Pa., 1977).

There is no merit to plaintiffs' contention that the attorney-client privilege does not protect any statements and writings which counsel made or furnished to the client. The attorney-client privilege

bars counsel from revealing the contents of any confidential communication made by the client to counsel. Thus, if any statement or writing from counsel to the client would reveal the contents of a confidential communication made by the client to counsel, the statement or writing is protected by the attorney-client privilege. *City of Shamokin v. West End National Bank*, 22 D.&C.3d 232 (1982); *Northampton Borough Municipal Authority v. Remsco Associates, Inc.*, 22 D.&C.3d 541, 550 (1981); *Eiseman v. Hornberger*, 44 D.&C.2d 128 (1968); and *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 862 (D.C. Cir., 1980).

This court's position is consistent with Professor Wigmore's discussion of this aspect of the attorney-client privilege.

"Communications by the attorney to the client

"That the *attorney's communications* to the client are also within the privilege was always assumed in the earlier cases and has seldom been brought into question. The reason for it is not any design of securing the attorney's freedom of expression, but the necessity of preventing the use of his statements as admissions of the client (section 1071 supra), or as leading to inferences of the tenor of the client's communications — although in this latter aspect, being hearsay statements, they could seldom be available at all (section 1063 supra)." (emphasis in original). 8 *Wigmore's Evidence* (McNaughton Rev., 1961) §2320 (pp. 628-9).

But the attorney-client privilege protects only confidential information which the client furnished counsel.[2] It does not protect any information which

2. The scope of disciplinary rule 4-101 is broader than the scope of the attorney-client privilege. It bars disclosure of any

counsel obtained from third parties in the course of the representation. Thus, any communications from counsel to the client disclosing information from third parties would not be protected because the underlying communication between counsel and the third party is not protected.

In the case of *In Re Westinghouse Electric Corporation Uranium Contracts Litigation,* supra, the court protected communications by counsel to the client only to the extent that the communications were based on confidential information which the client furnished counsel:

"The statute is essentially a codification of the common law privilege. *Cohen v. Jenkintown Cab Co.,* 238 Pa. Super. 456, 462 n.2, 357 A.2d 689 (1976), and while the statute refers only to communications from the client to the attorney and the privilege is intended to protect the client and not the attorney, the protection of the privilege must encompass all confidential professional communications from the attorney to the client, *to the extent that such communication is based on confidential facts disclosed to the attorney by the client.*" At p. 56. (emphasis added).

Also see *McCormick on Evidence* §89 Third Edition, 1984:

"The modern justification of the privilege, namely, that of encouraging full disclosure by the client for the furtherance of the administration of justice, might suggest that the privilege is only a one-way one, operating to protect communications of the cli-

---

information which counsel gains in the professional relationship. But this disciplinary rule only prohibits the voluntary disclosure of information. D.R.4-101 (c) (2) specifically authorizes counsel to reveal information gained in the professional relationship when required by law or court order.

ent or his agents to the lawyer or his clerk but not vice versa. However, it is generally held that the privilege will protect at least those attorney to client communications which would have a tendency to reveal the confidences of the client. . . .

"An even more embracive view, adopted by statute in a few states, would protect against disclosure by the attorney of any knowledge he has gained while acting as such, even information obtained from sources other than the client. Such an extension finds no justification in modern day policy, and perhaps is a carry-over from the days when the privilege was thought of as primarily for the protection of the honor of the profession. In any event, the more widely prevailing rule does not bar divulgence by the attorney of information communicated to him or his agents by third persons. Nor does information so obtained become privileged by being in turn related by the attorney to the client in the form of advice." At pp. 212-213 (footnotes omitted).

This means that Thorp, Reed must furnish the information that plaintiffs seek to the extent that the writings or oral conversations concern information that counsel obtained from third parties. But any communications from counsel to the client based upon information obtained from the client is protected because of the likelihood that disclosures of the contents of such a communication from counsel to the client would reveal the contents of the confidential communication from the client to counsel.

For these reasons, this court enters the following

## ORDER

On this May 4, 1987, it is hereby ordered that:

(1) Within 20 days, defendant shall answer interrogatories four and eight of plaintiffs' first set of interrogatories.

(2) With respect to interrogatory three, within 20 days, defendant shall furnish the writings and summaries which plaintiffs seek where the communication from the law firm to the client is not based upon or does not otherwise reveal any confidential information disclosed to the law firm by the client.